NIKKI BROWN INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD JARRED MICHAEL CAFFEY

VERSUS

JASON CAFFEY

* NO. 2024-CA-0388

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 1998-14152, DIVISION "K"
Honorable Bernadette D'Souza, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Dale N. Atkins)

Christine L. DeSue
ATTORNEY AT LAW
3445 N. Causeway Blvd.
Suite 505
Metairie, LA 70002

        COUNSEL FOR PLAINTIFF/APPELLEE

Renee L. Swanson
RENEE SWANSON, LLC
412 Dolhonde Street
Gretna, LA 70053

        COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**DECEMBER 27, 2024**

*RLB*

*DLD*

*DNA*

Appellant Jason Caffey ("Mr. Caffey") seeks review of the trial court's judgment which denied, in part, his petition to annul a contempt judgment that ordered him to pay child support arrearages. For the reasons that follow, the trial court's judgment is affirmed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a decades old action to establish and enforce child support. The initial action in this matter was instituted in August 1998 when Appellee Nikki Brown ("Ms. Brown") filed a petition to establish paternity and support obligation against Mr. Caffey. Ms. Brown and Mr. Caffey were never married and have two children together, J.M.C. and J.A.B.

In June 1999, the parties entered into a consent agreement that established child support in the amount of $7,500.00 per month. In February 2000, the trial court signed an order *ex parte* making the consent agreement a part of the record.

1

In December 2000, the trial court granted Ms. Brown's rule for contempt and wage assignment order. Thereafter, Mr. Caffey moved to rescind the December 2000 contempt judgment. Ms. Brown also filed a motion and order to rescind the judgment and submitted an interim amended judgment. The hearing on the motions resulted in the trial court entering an interim amended judgment establishing child support in an amount of $7,500.00 per month and ordering of DNA test. Mr. Caffey appealed the judgment; however, during the pendency of the appeal to this Court, the parties entered into a consent agreement in April 2002. The April 2002 Consent Agreement ("the April 2002 Agreement"), which is the subject of the present appeal, was entered into the record on April 30, 2002. Notably, the April 2002 Agreement does not bear the trial judge's signature or a place for the trial judge's signature.

In December 2002, Ms. Brown moved to have the consent agreement made part of the record. The matter was then set for a hearing.

The procedural history thereafter is called into question as the remainder of the record suggests portions are missing. Namely, in February 2008, Mr. Caffey filed a rule to decrease child support that references an August 16, 2005 consent judgment. Additionally, the record in Mr. Caffey's bankruptcy matter in the United States Bankruptcy Court for the Southern District of Alabama, took notice of the pending rule to decrease child support and a proof of claim filed by Ms. Brown in the bankruptcy proceedings. Despite efforts to locate any missing volumes of the record in this case, the purported August 2005 consent judgment could not be located. Likewise, the bankruptcy record did not contain an August 2005 consent judgment.

2

Nevertheless, in December 2007, Ms. Brown filed a rule for contempt for failure to pay child support. On February 12, 2008, the trial court found Mr. Caffey in contempt and made executory child support arrearages in the amount of $214,000.00. In October 2018, Ms. Brown filed another rule for contempt alleging that Mr. Caffey failed to meet his child support obligation since February 2008. While awaiting a hearing on Ms. Brown's rule for contempt, in November 2018, the trial court signed a qualified domestic relations order regarding the February 2008 judgment of contempt and child support arrearages. In April 2019, a hearing on Ms. Brown's October 2019 rule for contempt was held, and the trial court rendered judgment in May 2019, finding Mr. Caffey in contempt and made executory the child support arrearages of $791,250.00.

In January 2023, Ms. Brown filed a rule to show cause to sign the domestic relations order. Thereafter, Mr. Caffey filed petitions to annul the May 2019 judgment pursuant to La. C.C.P. arts. 2002 and 2004. The trial court heard the matter in March 2019 and rendered judgment granting in part and denying in part Mr. Caffey's petitions to annul. Mr. Caffey files the instant appeal of the trial court's denial of his petition to annul pursuant to La. C.C.P. art. 2004 only.

## STANDARD OF REVIEW

In this case, the trial court granted in part Mr. Caffey's petition to annul based on inadequate service as provided by La. C.C.P. art. 2002; however, the trial court denied in part Mr. Caffey's petition to annul pursuant to La. C.C.P. art. 2004, finding that Ms. Brown's action to collect on child support arrears is not prescribed. A trial court's factual findings are reviewed for manifest error. *Richard v. Richard*, 14-1365, p. 4 (La. App. 4 Cir. 6/3/15), 171 So.3d 1097, 1100. Whereas, appellate review of questions of law are "simply a decision as to whether

3

the trial court's decision is legally correct or incorrect." *Id.* (internal quotations omitted) (citation omitted).

## *DISCUSSION*

The granting of a petition to annul a judgment under La. C.C.P. art. 2004 requires proof that the judgment was obtained through fraud or ill practices. Determination of whether a judgment was obtained through fraud or ill practices considers whether: "(1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable." *Power Mktg. Direct, Inc. v. Foster*, 05-2023, p. 12 (La. 9/6/06), 938 So.2d 662, 670. Our jurisprudence further recognizes that "there need not necessarily be a showing of intentional fraud or wrongdoing for a [petitioner] to prevail…Even innocent acts which deprive a party cast in judgment of some legal right can form the basis of [a] nullity action." *Id.*, 05-2023, pp. 12-13, 938 So.2d at 671 (citation omitted).

Mr. Caffey maintains that the parties' April 2002 Agreement was never made a judgment of the trial court. Therefore, he cannot be held in contempt for violating a judgment that does not exist. On this basis, he claims the May 2019 contempt judgment for failure to pay child support was obtained by ill practice in violation of La. C.C.P. art. 2004.

While Mr. Caffey makes much of whether the April 2002 Agreement is deemed a judgment or a contract between the parties, we find that, in this particular case, how the child support obligation was memorialized is of no moment. The outcome remains the same. We address below the child support obligation under each form separately.

4

*Existence of the Child Support Judgment*

Although Mr. Caffey argues on appeal that no judgment memorializes the April 2002 Agreement, we note that Mr. Caffey's own pleadings indicate that a consent judgment was in fact made a part of the record. Namely, Mr. Caffey's February 11, 2008 rule to decrease child support references a child support judgment from August 16, 2005, with the same terms as those in the April 2002 Agreement and which have been asserted throughout the life of this litigation— $7,500.00 per month for both children in child support. This admission in Mr. Caffey's own pleading suggests that portions of the record are missing (including the purported August 16, 2005 judgment) and that the parties proceeded in the action as though there was a judgment. Mr. Caffey's counsel went as far as admitting so in pleadings filed on his behalf. Both parties filed pleadings in accordance with this fact.

Further, the February 12, 2008 judgment rendered in connection with Ms. Brown's December 28, 2007 rule for contempt, established child support arrears in the amount of $214,000.00. The judgment does not reference any prior judgments or plainly state that a child support obligation was owed. Nevertheless, without evidence of any intervening judgment for child support, namely the August 16, 2005 judgment, the arrearage had to be based on some monthly amount and could have only been determined by the April 2002 Agreement. Therefore, even assuming Mr. Caffey's counsel was incorrect in referencing an August 16, 2005 consent judgment, a contention he does not make, the April 2002 Agreement was recognized and approved by the trial court's reliance on its terms to calculate the amount of arrearages. Thus, the April 2002 Agreement became merged with the February 12, 2008 contempt judgment that made the child support arrearage

5

executory.

Mr. Caffey argues that even if the April 2002 Agreement is a valid judgment, it would have been unenforceable by the time she filed her October 2019 rule for contempt. He claims that if considered a judgment, it is a money judgment that prescribed after ten years and would have needed to be revived before the lapse of the prescriptive period pursuant to La. C.C. art. 3501.

However, the law distinguishes money judgments under La. C.C. art. 3501 and child support judgments, which are specifically governed by La. R.S. 13:4291. A child support judgment is treated differently from an ordinary money judgment because it arises from an obligation of a parent to provide for the support of their child.

La. R.S. 13:4291 addresses past-due child support rendered pursuant to the judgment ordering the support. Under La. R.S. 13:4291(A)(1), "prescription shall not begin to run against any such judgment until the child reaches the age of majority or the obligation to provide child support ceases." La. R.S. 13:4291(A)(2) states that a "judgment rendered in a summary proceeding determining the amount of delinquent child support owed shall become a judicial mortgage when it is final and has been recorded…[t]he *effect of recordation*…shall prescribe ten years from the date of the judgment, unless revived and reinscribed in accordance with law." (Emphasis added). Additionally, La. C.C. art. 3501.1 provides, "[a]n action to make executory arrearages of child support is subject to a [prescriptive period] of ten years." As the trial court explained, "[o]nce the obligation ceases, there is a ten-year prescriptive period to make the arrears executory."

Applying La. R.S. 13:4291 demonstrates that the prescriptive period in this

case has not lapsed. Prescription did not begin to run until the parties' children reached the age of majority. The parties' son reached the age of majority in 2015, and their daughter reached the age of majority in 2017. Mr. Caffey's child support obligation does not prescribe until 2025 and 2027. Therefore, we find no merit to Mr. Caffey's argument that even if the obligation to pay child support is deemed a judgment, rather than an agreement, that the obligation has prescribed. On this basis, the trial court correctly denied Mr. Caffey's petition for nullity pursuant to La. C.C. art. 2004.

*Extrajudicial Agreement*

Mr. Caffey also argues that because the April 2002 Agreement was never made a judgment of the trial court it is nothing more than a contract between himself and Ms. Brown. Mr. Caffey relies on La. C.C. art. 3499, which provides a ten-year prescriptive period for personal actions. As such, Mr. Caffey maintains that Ms. Brown had until April 2012 to seek enforcement of their April 2002 Agreement. We find no merit to Mr. Caffey's argument.

La. C.C. art. 3462, provides in pertinent part, "[p]rescription is interrupted…when the obligee commences action against the obligor." Likewise, "[a]n interruption of prescription resulting from the filing of a suit…continues as long as the suit is pending." La. C.C. art. 3463(A). Interruption continues in this way unless "the plaintiff abandons the suit, voluntarily dismisses the suit…or fails to prosecute the suit at the trial." La. C.C. art. 3463(B). Furthermore, "dismissal of a suit pursuant to a compromise does not constitute a voluntary dismissal." *Id.*

The record is clear that Ms. Brown at no point abandoned or voluntarily dismissed her action to seek enforcement of Mr. Caffey's obligation to pay child support. Ms. Brown's December 2007 rule for contempt for failure to pay child

7

support, which resulted in the February 2008 judgment, would have interrupted prescription. Therefore, even if the April 2002 Agreement did not become merged and made a part of the February 2008 judgment, the April 2002 Agreement is not prescribed.

## CONCLUSION

Whether the April 2002 Agreement is a contract agreement or a judgment, the result remains the same. As the trial court rightly concluded, "[i]f there is no judgment, there is an agreement, and prescription is interrupted during the pendency of the litigation. If there is a judgment, the prescription of the obligation established therein will not begin to prescribe until ten years after the children reach the age of majority." The procedural concerns Mr. Caffey raises on appeal do not change the fact that Mr. Caffey's child support obligation is not prescribed.

## DECREE

We find no error in the trial court's denial of Mr. Caffey's petition to annul pursuant to La. C.C. art. 2004. Therefore, the trial court's April 8, 2024 judgment granting in part and denying in part Mr. Caffey's petitions for nullity is affirmed.

**AFFIRMED**
**December 27, 2024**